# United States District Court

### FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## CRIMINAL DIVISION
### VENUE:  SAN FRANCISCO



FILED
2010 JUN -1  P 3: 35

---

### UNITED STATES OF AMERICA,

## V.



PETER TOWNSLEY



CR 10 0428

### DEFENDANT.

CRB

---

# INDICTMENT

18 U.S.C. § 1349 – Mail Fraud Conspiracy
18 U.S.C. § 1341 – Mail Fraud
18 U.S.C. § 1001(a) – False Statement
18 U.S.C. § 2 – Aiding & Abetting

---

A true bill.

_____
                                 Foreman

Filed in open court this _____ day of
JUNE 2010
_____

_____
                                    Clerk

Bail, $ NO BAIL ARREST WARRANT



PER 18 U.S.C. 3170

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ INFORMATION  ☑ INDICTMENT

Matter Sealed: ☐ Juvenile  ☑ Other than Juvenile

☐ Pre-Indictment Plea  ☐ Superseding  ☐ Defendant Added
☑ Indictment  ☐ Charges/Counts Added
☐ Information

Name of District Court, and/or Judge/Magistrate Location (City)

UNITED STATES DISTRICT COURT   San Francisco
DISTRICT OF Northern California   Divisional Office

Name and Office of Person Furnishing Information on THIS FORM   JOSEPH P. RUSSONIELLO
☐ U.S. Atty  ☐ Other U.S. Agency
Phone No.

Name of Asst. U.S. Attorney (if assigned)   Stacey P. Geis

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)
FBI and USDA

☐ person is awaiting trial in another Federal or State Court (give name of court)

☐ this person/proceeding transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Atty ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant. (Notice of Related Case must still be filed with the Clerk.)

☐ prior proceedings or appearance(s) before U.S. Magistrate Judge regarding this defendant were recorded under

SHOW DOCKET NO.

MAG. JUDGE CASE NO.

Place of offense     County

---

CASE NO.

USA vs.

Defendant:   PETER TOWNSLEY

Address:

CR 10 0428

CRB

☐ Interpreter Required   Dialect: _____

Birth Date   ☑ Male   ☐ Alien (if applicable)
  ☐ Female

Social Security Number _____

### DEFENDANT

Issue: ☒ Warrant   ☐ Summons

Location Status:

Arrest Date _____ or Date Transferred to Federal Custody _____

☐ Currently in Federal Custody
☐ Currently in State Custody
  ☐ Writ Required
☐ Currently on bond
☐ Fugitive

Defense Counsel (if any): _____

☐ FPD  ☐ CJA  ☐ RET'D
☐ Appointed on Target Letter

☐ This report amends AO 257 previously submitted

---

## OFFENSE CHARGED - U.S.C. CITATION - STATUTORY MAXIMUM PENALTIES - ADDITIONAL INFORMATION OR COMMENTS

Total # of Counts 10

| Set | Title & Section/Offense Level (Petty = 1 / Misdemeanor = 3 / Felony = 4) | Description of Offense Charged | Count(s) |
|---|---|---|---|
| | 18 U.S.C. § 1349 (4) | Conspiracy to Commit Mail Fraud | 1 |
| | 18 U.S.C. § 1341 (4) | Mail Fraud | 2-8 |
| | 18 U.S.C. § 1001(a) (4) | False Statements | 9-10 |
| | 18 U.S.C. § 2 | Aiding & Abetting | |
| | Please see attached for Maximum Penalties | | |

## ATTACHMENT

Penalty:

Count One:        20 yrs Imprisonment; $250,000 fine; 3yrs Supervised Release; $ 100
                  Special Assessment.

Counts Two-Eight: 20yrs Imprisonment; $ 250,000 fine; 3yrs Supervised Release; $100
                  Special Assessment.

Counts Nine-Ten : 5yrs Imprisonment; $ 250,000 fine; 3yrs Supervised Release; $ 100
                  Special Assessment.



1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10                  SAN FRANCISCO DIVISION
11  UNITED STATES OF AMERICA,        )  No.: CR 10 0428
                                     )
12        Plaintiff,                 )  VIOLATIONS:
                                     )
13        v.                         )  18 U.S.C. § 1349 – Mail Fraud Conspiracy
                                     )  18 U.S.C. § 1341 – Mail Fraud
14  PETER TOWNSLEY,                  )  18 U.S.C. § 1001(a) – False Statement
                                     )  18 U.S.C. § 2 – Aiding & Abetting
15        Defendant.                 )
                                     )
16                                   )
                                     )
17  _____   )  SAN FRANCISCO VENUE
18
19                    I N D I C T M E N T
20  The Grand Jury charges:
21          BACKGROUND AND LEGAL FRAMEWORK
22       At all times relevant to this Indictment:
23       1.      The defendant, PETER TOWNSLEY, was the founder and president of
24  California Liquid Fertilizer ("CLF"), a company that sold products represented to be
25  organic fertilizers to farmers throughout California.
26       2.      CLF first maintained an office and manufacturing facility in
27
28

INDICTMENT (TOWNSLEY)

Salinas, California, and in 1999, moved to Gonzales, California, both of which are in the Northern District of California.

3.     In 1990, Congress enacted the Organic Foods Production Act of 1990, 7 U.S.C. § 6501-6522 (the "Act"), to regulate the organic agriculture industry. As part of the Act, the United States Department of Agriculture ("USDA") created the National Organic Program ("NOP") to ensure that agricultural products being sold as organic were made from entirely organic inputs and ingredients.

4.     The NOP developed, implemented, and administered national production, handling, and labeling standards for organic agricultural products. The Act generally required that to be sold or labeled as an organically produced agricultural product, the product (1) must be produced and handled without the use of synthetic chemicals, and (2) must not be produced on land to which any prohibited substances, including synthetic chemicals, had been applied during the previous three years. 7 U.S.C. § 6504. The Act also provided that, with limited exceptions, organic crop producers could not use fertilizers containing synthetic inputs or ingredients. 7 U.S.C. § 6508(b).

5.     It could take a minimum of three years for a farm to become certified to sell organic products because the farm's land must be free from synthetic chemicals, including synthetic chemical fertilizers, for at least three years.

6.     An organic farm was required to be certified as complying with NOP regulations in order to market its production as "organic." The NOP granted organic certification through quasi-governmental groups called "certifiers." Certifiers, such as California Certified Organic Farmers ("CCOF"), were accredited by the USDA through a strict application process.

7.     On February 6, 2004, the NOP approved California's State Organic Program, allowing the state to enforce NOP requirements. After this date, the California Department of Food & Agriculture ("CDFA") was responsible for licensing and registering distributors and manufacturers of fertilizer materials, including both organic

INDICTMENT (TOWNSLEY)                    2

and non-organic fertilizer. The CDFA required all fertilizer material to be appropriately and accurately labeled.

8. The CDFA also required that, in order for an entity to be licensed as an organic fertilizer manufacturer in California, its products had to be approved by the Organic Materials Review Institute ("OMRI"). OMRI was a non-profit organization that provided independent review of materials and processes to determine their suitability for producing, processing, and handling organic food and fiber. Thus, a certifier such as CCOF could check to see if a product, such as a fertilizer, used by a farmer was listed as approved by OMRI in order to determine whether to allow a farm to become certified, or remain certified, as an organic farm. Organic farmers also relied on OMRI certification, found on a product's label, to ensure that the products they were using for organic production complied with NOP standards.

9. To have a product such as a fertilizer placed on OMRI's list of approved products, a manufacturer such as CLF was required to submit an application to OMRI disclosing all the ingredients in the product and the manner in which it was manufactured or produced. Once a product was approved by OMRI to be listed as organic, the manufacturer of the product was required to renew its application every year in order to maintain the OMRI listing. In doing so, the manufacturer was required to disclose and certify, among other things, whether anything had changed in the formulation of the product. OMRI also required that should an input or ingredient in the product's formulation change at any time, the manufacturer must submit a new application for the reformulated product immediately to ensure NOP compliance.

10. Under Title 7, C.F.R. § 205.105(a), synthentic substances can not be used in organic production unless they are specifcally listed as allowed on a National List developed by the National Organics Standards Board for the NOP. OMRI would not approve a product if an input was not on the National List. Ammonium chloride and

INDICTMENT (TOWNSLEY)       3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ammonium sulfate are both synthetic chemicals and at all relevant times were not on the National List.

## SCHEME TO DEFRAUD

11. Beginning at a time unknown to the grand jury, but no later than April 2000, and continuing through in or about December 2006, in the Northern District of California and elsewhere, the defendant,

### PETER TOWNSLEY,

and others known and unknown to the grand jury, did engage in a material scheme to defraud OMRI, certifiers such as CCOF, and customers such as farmers, including organic farmers, and to obtain money and property from customers by means of materially false and fraudulent pretenses, representations and promises, and by material omissions, and did use the mails and cause the mails to be used to carry out and attempt to carry out essential parts of the scheme.

12. In November and December 1998, TOWNSLEY signed and submitted applications to OMRI to have a CLF product called "Biolizer XN" listed as organic. TOWNSLEY's final application on behalf of CLF stated that Biolizer XN was a liquid organic fertilizer composed of ocean-going fish and fish byproducts, feathermeal, and water. In reliance on these representations, in February 1999, OMRI approved Biolizer XN to be listed as an organic fertilizer. CLF then began marketing Biolizer XN as an organic fertilizer that was OMRI listed.

13. As part of his scheme to defraud, in approximately May 2000, TOWNSLEY knowingly changed and caused to be changed the chemical ingredients in Biolizer XN. TOWNSLEY and others affiliated with CLF changed the formulation of Biolizer XN because the fish and feathermeal were not well suited for drip irrigation (the manner in which organic farmers apply organic fertilizer), and because the fish and feathermeal ingredients did not provide the amount of nitrogen that customers were seeking. Despite knowing that the new formulations did not contain fish and feathermeal,

INDICTMENT (TOWNSLEY)                4

had not been approved by OMRI, and contained synthetic ingredients, TOWNSLEY continued to sell Biolizer XN as an organic product until December 2006.

14.    As a further part of his scheme to defraud, from approximately August 2000 through July 2006, TOWNSLEY submitted annual renewal applications to OMRI that falsely stated that the information previously submitted to OMRI regarding the composition of Biolizer XN had not changed. At no time after obtaining the initial approval from OMRI in 1999 did TOWNSLEY inform OMRI of the change in ingredients or submit a new application to OMRI for the reformulated product.

15.    From August 2000 through December 2006, based on TOWNSLEY's material misrepresentations and omissions, OMRI kept Biolizer XN on the list of accepted organic fertilizers and permitted CLF to use the "OMRI Listed" trademark on the Biolizer XN labels.

16.    As a further part of his scheme to defraud, TOWNSLEY marketed and sold CLF's Biolizer XN fertilizer as a product that was approved and listed by OMRI. The labels of Biolizer XN stated that the product was derived from "ocean going fish and hydrolized feathermeal" or from "seafood byproducts, plant extracts, and hydrolyzed feathermeal." The labels further stated that "this product is marketed as 100% natural, organic fertilizer, whose ingredients are derived from organic inputs." The labels also bore the "OMRI Listed" trademark. At no time did the labels disclose the synthetic ingredients. From May 2000 through in or about December 2006, TOWNSLEY marketed and sold approximately $6 million worth of Biolizer XN with this information on the label knowing that OMRI had not approved the formulation being marketed, and knowing that the product did not contain fish or feathermeal.

COUNT ONE: 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud

17.    Paragraphs 1 through 16 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

18.    From at least in or about April 2000 through in or about December 2006,

INDICTMENT (TOWNSLEY)                    5

both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

### PETER TOWNSLEY,

together with others, did knowingly and intentionally conspire to devise a material scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by material omissions, and for the purpose of executing such scheme and artifice, did use the mails and knowingly cause the mails to be used, in violation of Title 18, United States Code, Section 1349.

### Certain Acts in Furtherance of the Conspiracy

19. As part of the conspiracy and to carry out its objects, the defendant PETER TOWNSLEY, together with others known and unknown to the grand jury, committed and caused to be committed the following acts, among others, in the Northern District of California and elsewhere:

a. In or about April 2000, TOWNSLEY and others who worked for CLF changed the ingredients for the manufacture of Biolizer XN from fish and feathermeal to a product that contained a synthetic chemical called ammonium chloride. Ammonium chloride is a synthetic chemical that is prohibited for use in organic farming practices.

b. On or about August 18, 2000, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated July 30, 2000, and which stated the following certification: "The Information above and attached is correct to the best of my knowledge, and the information already submitted to OMRI regarding the products listed above has not changed. I agree to abide by all policies in the most current version of the OMRI Operating Manual." Between submitting the initial applications to OMRI for the approval of Biolizer XN in November and December 1999, and submitting the renewal application to OMRI on or about August 18, 2000, Townsley had submitted renewal applications for Biolizer XN in which he also certified that the

INDICTMENT (TOWNSLEY)                    6

information previously submitted to OMRI regarding Biolizer XN had not changed.

c. In or about May 2001, TOWNSLEY and others who worked for CLF again changed the ingredients for the manufacture of Biolizer XN, thereby substituting one prohibited synthetic ingredient for another prohibited synthetic ingredient. The new ingredient was ammonium sulfate – a synthetic chemical that is a by-product from the production of lysine and is commonly used as a fertilizer in conventional, non-organic farming.

d. From approximately May 2001 through December 2006, CLF produced Biolizer XN without using fish or feathermeal as ingredients, but instead using only ammonium sulfate as the sole ingredient for its manufacture.

e. From approximately May 2001 through December 2006, TOWNSLEY marketed and sold Biolizer XN bearing labels that stated that the product was 100% organic, and that the sole ingredients were fish and feathermeal.

f. On or about August 7, 2001, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated July 24, 2001. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

g. On or about September 6, 2002, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated August 30, 2002. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

h. On or about September 8, 2003, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated August 30, 2003. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

i. On or about November 3, 2003, CLF sent approximately 3,000 gallons of Biolizer XN to an organic grower.

INDICTMENT (TOWNSLEY)                7

j. On or about March 5, 2004, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated February 11, 2004. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not

changed.

k. On or about August 9, 2004, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated August 2, 2004. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

l. On or about July 22, 2005, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated July 18, 2005. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

m. On or about July 1, 2005, CLF purchased approximately 190,000 pounds of ammonium sulfate from a company located in Illinois.

n. On or about July 21, 2006, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated June 29, 2006. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

o. On or about July 22, 2006, CLF purchased approximately 190,000 pounds of ammonium sulfate from a company located in Illinois.

p. On or about October 24, 2006, CLF sent an invoice to a supplier who provides organic fertilizer to organic farmers for the purchase of a bulk shipment of Biolizer XN.

COUNTS TWO THROUGH EIGHT : 18 U.S.C. § 1341 – Mail Fraud

20. The allegations set forth in paragraphs 1 through 16 of this Indictment are hereby re-alleged and incorporated herein by reference as if set forth in full herein.

INDICTMENT (TOWNSLEY) 8

21.     On or about the dates set forth below, in the Northern District of California and elsewhere, to execute the scheme and artifice defraud set forth above, the defendant,

PETER TOWNSLEY,

did knowingly cause to be deposited in post offices and authorized depositories the below-listed mail matter to be delivered by the United States Postal Service and private and commercial interstate carriers:

| Count | Approximate Date of Mailing | Mailed From | Mailed To | Item Description |
|---|---|---|---|---|
| 2 | July 22, 2005 | Gonzales, CA | Eugene, OR | OMRI Annual Renewal Form |
| 3 | August 10, 2006 | Gonzales, CA | Eugene, OR | Letter from Townsley to OMRI with current Biolizer XN label |
| 4 | July 21, 2006 | Gonzales, CA | Eugene, OR | OMRI Annual Renewal Form |
| 5 | August 18, 2006 | Gonzales, CA | Salinas, CA | Invoice from CLF to customer for Biolizer XN |
| 6 | August 23, 2006 | Gonzales, CA | Salinas, CA | Invoice from CLF to customer for Biolizer XN |
| 7 | September 7, 2006 | Gonzales, CA | Salinas, CA | Invoice from CLF to customer for Biolizer XN |
| 8 | October 24, 2006 | Gonzales, CA | Fresno, CA | Invoice from CLF to customer for Biolizer XN |

All in violation of Title 18, United States Code, Section 1341.

COUNTS NINE AND TEN:  18 U.S.C. § 1001 – False Statements

22.     Paragraphs 1 through 16 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

INDICTMENT (TOWNSLEY)                    9

23.    On or about the dates set forth below, in the Northern District of California and elsewhere, the defendant,

PETER TOWNSLEY,

did knowingly and willfully (1) falsify, conceal and cover up by trick, scheme, and device a material fact, (2) make a materially false, fictitious, and fraudulent statement and representation, and (3) make and use a materially false writing and document, knowing the same to contain materially false, fictitious and fraudulent statements and entries, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, submitting to OMRI an annual renewal form stating that the information about the formulation of Biolizer XN had not changed from the time that the information was originally submitted in 1998, when, in fact, TOWNSLEY knew that was not true:

| Count | Date | Item Description |
|-------|------|------------------|
| 7 | July 22, 2005 | OMRI Annual Renewal Form |
| 8 | July 21, 2006 | OMRI Annual Renewal Form |

All in violation of Title 18, United States Code, Section 1001(a).

DATE:                                                    A TRUE BILL.

June 1st 2010

FOREPERSON

JOSEPH P. RUSSONIELLO
United States Attorney

BRIAN STRETCH
Chief, Criminal Division

(Approved as to form: AUSA QUIS )

INDICTMENT (TOWNSLEY)                    10