IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    Plaintiff,<br><br>v.<br><br>PETER TOWNSLEY,<br><br>    Defendant.<br>_____/ | No. 10-CR-00428 CRB<br><br>**MEMORANDUM AND ORDER DISMISSING COUNTS 9 AND 10 OF THE INDICTMENT** |

Defendant Peter Townsley is charged in a 10-count Indictment with mail fraud, conspiracy to commit mail fraud, and making false statements in connection with, among other things, his alleged mislabeling of fertilizer as "organic" when such was not the case. See generally Indictment (dkt. 1).

Presently before the Court is a Motion to Dismiss Counts 9 and 10 of the Indictment, charging violations of 18 U.S.C. § 1001, on the ground that the Court lacks jurisdiction. Dkt. 36. Because the Court agrees that it lacks jurisdiction over the section 1001 Counts, the Motion to Dismiss Counts 9 and 10 is GRANTED.

**I.     BACKGROUND**

    **A.     The Regulatory Framework Governing the Sale of Organic Food**

Congress passed the Organic Food Production Act ("OFPA") in 1990. The OFPA's purpose is to "assure consumers that organically produced products meet a consistent standard." 7 U.S.C. § 6501. The OFPA authorized the Secretary of Agriculture to issue

regulations to implement the Act, establish a certification program, and implement that program via "certifying agents." 7 U.S.C. §§ 6521(a); 6503(a); 6503(d). Certifying agents are accredited by the Secretary for certifying a farm as producing "organic" products within the meaning of federal law. 7 U.S.C. § 6502(3). In addition, the OFPA also required the Secretary to establish a "National List" of substances approved for use in organic farming. 7 U.S.C. § 6517; 7 U.S.C. § 6504; 7 C.F.R. § 205.502(b).

Certifying agents are supposed to check the veracity of the farmer's information and ensure that "prohibited substances have not been and are not being applied to the operation . . . ." 7 C.F.R. § 205.403(c). Certifying agents certify farming operations as organic. They do not certify manufacturers of farming "inputs" such as fertilizer. This presents a problem for farmers because some input producers, like Townsley's company, are unwilling to disclose publicly the specific formulas they use in creation of their inputs, considering that information to be propriety. Without that information, though, it can be difficult for a farmer to show a certifying agent that his inputs are approved for use in organic farming. Third-party companies, like the Organic Materials Review Institute ("OMRI"), attempt to solve this problem by agreeing to confidentially review an input and make a determination whether it qualifies as permissible for use in organic farming. Farmers then use the fact of OMRI Listing in helping them determine whether to purchase a particular input. Input manufacturers know farmers rely on OMRI Listing in choosing which inputs to purchase. Indeed, reliance on OMRI Listing by farmers (and, possibly, certifying agents) is presumably why input manufacturers seek OMRI Listing in the first place. However, during the time period at issue in the Indictment, the OMRI was not regulated by federal law and had no formal (or authorized informal) relationship with the federal government.[1]

---

[1] After the events at issue in the Indictment, the relationship between the OMRI and the federal government changed. In March 2008, the United States Department of Agriculture ("USDA") expressly permitted certifying agents to rely on OMRI Listing to determine whether a farm's inputs were acceptable. See Mar. 5, 2008 Letter from the Acting Director of the National Organic Program to USDA Certifying Agents, Ex. A to Mot. to Dismiss Counts 9 and 10 (dkt. 36) ("It has been the policy of the National Organic Program (NOP) that each certifying agent is responsible for conducting their own reviews of inputs for agricultural production . . . . . . . [T]he NOP is amending this policy to allow certifying agents to recognize reviews conducted by other certifying agents and competent third-party

2

### B.     Scheme to Defraud

According to the government, Townsely engaged in a scheme to and did defraud the OMRI, customers, and others, by falsely representing that his fertilizer, Biolizer XN, was acceptable for use in organic farming when it was not.

In late 1998, Townsely sent an application to the OMRI for Biolizer XN to be OMRI Listed.  Id. ¶ 12.  That application claimed that Biolizer XN was as liquid fertilizer composed of ocean-going fish and fish byproducts, feathermeal, and water.  Id.  In reliance on these representations, in early 1999, the OMRI approved Biolizer XN, and Townsley then marketed Biolizer XN as OMRI Listed.  Id.

A few months later (May 2000), Townsley knowingly changed the chemical ingredients in Biolizer XN.  Id. ¶ 13.  The new formulation did not contain fish and feathermeal, had not been approved by the OMRI, and contained synthetic ingredients.  Id.  Nevertheless, Townsley continued to market and sell Biolizer XN as OMRI Listed until December 2006.  Id.  During the years between Biolizer XN's OMRI Listing in early 1999 and the cession of its sale in late 2006, Townsley submitted annual renewal applications to the OMRI that falsely stated that the information previously submitted to the OMRI regarding Biolizer XN's ingredients had not changed.  Id. ¶ 14.  Townsley never informed the OMRI of the change in Biolizer XN's ingredients or submitted a new application to the OMRI for the reformulated product.  Id.

In addition to deceiving the OMRI, Townsley also deceived consumers by mislabeling Biolizer XN as being derived from "ocean going fish and hydrolized feathermeal" or from "seafood byproducts, plant extracts, and hydrolyzed feathermeal."  Id. ¶ 16.  The labels also falsely asserted that "this product is marketed as 100% natural, organic fertilizer, whose ingredients are derived from organic inputs."  Id.

* * *

---

reviewers [like the OMRI].") (emphasis added).

The government has charged Townsley with, among other things, making false statements in a matter within executive branch authority. See 18 U.S.C. § 1001. Townsley has filed a motion to dismiss those Counts for lack of jurisdiction.

## II. Legal Standard

Counts 9 and 10 charge Townsley with violating 18 U.S.C. § 1001, which prohibits, "in any matter within the jurisdiction of the executive . . . branch of the Government . . . knowingly and willfully" making material false statements. The basis for the charges in Counts 9 and 10 are two annual renewal forms Townsley submitted to the OMRI in which he said (allegedly falsely) "that the information about the formulation of Biolizer XN had not changed from the time the information was originally submitted in 1998." Indictment (dkt. 1) ¶ 23.

The Supreme Court has said that "[t]he most natural, nontechnical reading" of the term "jurisdiction" in section 1001, "is that it covers all matters confided to the authority of an agency or department." United States v. Rodgers, 466 U.S. 475, 479 (1984). "A department or agency has jurisdiction, in this sense, when it has the power to exercise authority in a particular situation." Id. The reason for this broad interpretation is that Congress "inten[ed] to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." Id.

Even false statements made to non-governmental entities can subject a person to section 1001 liability provided such statements have a "direct relationship" with an authorized agency function. United States v. Facchini, 874 F.2d 638, 641 (9th Cir. 1989). The phrase "direct relationship" is also liberally construed, and the Ninth Circuit has held that, "[t]o establish jurisdiction under 18 U.S.C. § 1001, it is only necessary that the statement relate to a matter in which a federal agency has the power to act." United States v. Boone, 951 F.2d 1526, 1544 (1991). However, "[m]ere access to information is not enough to establish jurisdiction. To establish jurisdiction, the information received must be directly

4

related to an authorized function of the federal agency. Otherwise, the scope of section 1001 jurisdiction would be virtually limitless." Facchini, 874 F.2d at 642 (emphasis added).

## III. DISCUSSION

Townsley argues that his statements to the OMRI were not made in a "matter within the jurisdiction of the executive branch" because, essentially, the OMRI is private company not charged with the enforcement of any federal law or regulation and without any formal or authorized informal relationship with the federal government. The Court agrees.

### A. The OMRI Played No Official (or Authorized Unofficial) Role in Federal Certification of Farms

Three undisputed facts show that dismissal of Counts 9 and 10 is proper. First, the federal government did not regulate manufacturers of farming inputs like those manufactured by Townsley's company. Second, the federal government did not regulate third-party certifying companies like the OMRI. Third, certifying agents were not supposed to use OMRI Listing as a substitute for their obligation to determine whether a farming input was permissible under federal law.[2] Thus, Townsley's statements to the OMRI (a private, third-party unregulated by the government with no formal or authorized informal relationship to federal regulators) were not made in a matter within which the executive branch had the authority to act.

### B. Caselaw Supports Dismissal

The government argues that this case is similar to United States v. Green, 745 F.2d 1205 (1985), which upheld a jury verdict in a section 1001 case where false statements were made to a non-governmental entity. But Green is not only distinguishable, it shows why jurisdiction does not exist here. Green was the quality assurance director of a company called Con-Chem, a manufacturer of chemical coatings. Con-Chem attempted to secure a contract with Bechtel Power to supply coatings for use in a nuclear power plant. For Con-

---

[2] Indeed, certifying agents were chastised by the USDA for the exact practice (reliance on OMRI Listing) that the government is trying to use as the jurisdictional hook. See Livestock and Seed Program Audit, Review, and Compliance Branch Quality System Audit Reports, Ex B to Mot. to Dismiss Counts 9 and 10 (dkt. 36) and dkt. 50-1.

5

Chem to qualify its product for use, the product was required by the Nuclear Regulatory Commission ("NRC") to pass safety-related tests. Green falsified the results of those tests and delivered them to Bechtel. Green was charged with, among other things, making false statements in violation of section 1001. In dismissing Green's challenge to the sufficiency of the evidence as to the jurisdictional component of section 1001, the Ninth Circuit pointed out that the products Green lied about "were required by NRC to pass safety-related tests." Id. at 1209-10. Further, the entity Green lied to (Bechtel) had a direct relationship with the government in that Bechtel was operating a nuclear power plant that fell under NRC jurisdiction.

The product Townsley allegedly lied about was not regulated. Nor is Townsley alleged to have falsely represented anything about that product to a company with a direct (or even authorized indirect) relationship with a federal regulator. Indeed, certifying agents were cited for wrongful conduct in USDA Audits for using OMRI Listing as a substitute for an independent determination of whether an input was on the approved National List. The fact that some certifying agents apparently used OMRI Listing as a "tool" in deciding whether to certify farms as organic does not create a cognizable legal relationship between the OMRI and a matter that falls within agency jurisdiction.

The government also cites United States v. Balk, 706 F.2d 1056 (9th Cir. 1983) and United States v. Oren, 893 F.2d 1057 (9th Cir. 1990) to support its argument that Townsley's statements to the OMRI were made in a matter within the jurisdiction of the executive branch. Neither case is on point.

Balk, like Green, concerned false statements on "documents that [] were necessary to obtain work as a Navy contractor." Balk, 706 F.2d at 1059 (emphasis added). OMRI Listing was neither necessary or even arguably relevant under federal law for purposes of a farm obtaining federal certification as producing "organic" products.

Oren is also distinguishable. There, the Ninth Circuit held that the jurisdictional requirement of section 1001 was met where a defendant made false statements to an appraiser with the goal of driving up the price of a piece of property the National Park

6

Service was interested in and authorized to purchase. That appraisal, and the underlying fraudulent documentary support, was ultimately sent to the National Park Service. Oren, 893 F.2d 1064-65. Although Oren takes a broad view of the jurisdictional reach of section 1001, there, unlike here, (1) the false representations concerned a piece of real property expressly within an agency's jurisdiction (i.e. a piece of property that the National Parks Service was authorized to and eventually did purchase) and (2) the lies were directed to a third-party with a direct relationship to a federal agency. Here, by contrast, the USDA does not regulate input manufacturers or even the OMRI. As importantly, certifying agents were not permitted to use OMRI Listing as a proxy for ensuring a farmer's compliance with federal law.

Finally, as the Sixth Circuit has recently recognized, section 1001 has inherent ambiguities that ought to be construed in Townsley's favor. United States v. Ford, — F.3d —, 2011 WL 1405109 at *3 (6th Cir. 2011) ("The meaning of 'any matter' and 'jurisdiction' requires interpretation of unspecific words at an extremely high level of abstraction. . . . . The ambiguities of the language of section 1001 fit squarely within the Rule of Lenity, and we resolve them in favor of [the defendant]."). Thus, the Rule of Lenity counsels against applying section 1001 to the conduct alleged here – misrepresentations made to a private third-party entity with no contractual or otherwise sanctioned relationship to the government.

\* \* \*

Ultimately, the government's best argument for jurisdiction focuses on the reality that farmers and certifying agents were, as a matter of fact, relying on OMRI Listing, and Townsley knew as much and intended for such reliance to occur. Thus, in that sense, his conduct had the "tendency and effect of perverting normal and proper governmental activities and functions." Brogan v. United States, 522 U.S. 398, 413 (1998). The problem with this argument is that, in a criminal prosecution, it is appropriate to resolve the ambiguity in section 1001's jurisdictional reach in Townsley's favor. See Ford, — F.3d —, 2011 WL 1405109.

//

//

## IV. CONCLUSION

Accordingly, Townsley's Motion to Dismiss Counts 9 and 10 (dkt. 36) is GRANTED.

**IT IS SO ORDERED.**

Dated: May 12, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE