# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED
2011 JUL -7 P 3:42
RICHARD W. WIEKING
CLERK, U.S. DISTRICT
NORTHERN DISTRICT OF CALIFORNIA

---

UNITED STATES OF AMERICA,

V.

E-filing

CR 10-428 CRB

PETER TOWNSLEY

DEFENDANT(S).

---

## SUPERSEDING INDICTMENT

18 U.S.C. § 1326 - Mail Fraud Conspiracy
18 U.S.C. § 1341 - Mail Fraud
18 U.S.C. § 2 - Aiding & Abetting

---

A true bill.

_____
Foreman

Filed in open court this ___7___ day of

July, 2011

Brenda Tolbert
NO PROCESS Clerk

Bail, $ _____

7-7-11

Maria Elena James
United States Chief Magistrate Judge

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT      Name of District Court, and/or Judge/Magistrate Location
                                  ☒ SUPERSEDING        NORTHERN DISTRICT OF CALIFORNIA
                                                       SAN FRANCISCO DIVISION

**OFFENSE CHARGED**

18 U.S.C. § 1326 - Mail Fraud Conspiracy
18 U.S.C. § 1341 - Mail Fraud
18 U.S.C. § 2 - Aiding & Abetting

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

E-filing

DEFENDANT - U.S

▶ PETER TOWNSLEY

DISTRICT COURT NUMBER
CR 10-0428 CRB

FILED 2011 JUL -7 P (stamp) RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

PENALTY: Mail Fraud Conspiracy: Maximum Prison Term 5 Years; $250,000 fine; 3 year term of supervised release
Mail Fraud: Maximum Prison Term 20 Years; $250,000 fine; 3 year term of supervised release
Special Assessment: $100 per count

**DEFENDANT**

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☒ Is on Bail or Release from (show District)
      NDCA - San Francisco

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FBI & USDA

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY  ☐ DEFENSE   } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant   } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   MELINDA HAAG
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Susan Badger

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes" give date filed
been filed?  ☐ No

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount:
If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:       Before Judge:

Comments:

MELINDA HAAG (CABN 132612)
United States Attorney



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) No.: CR 10 0428 CRB |
|---|---|
| Plaintiff, | ) VIOLATIONS: |
| v. | ) 18 U.S.C. § 1349 – Mail Fraud Conspiracy |
| | ) 18 U.S.C. § 1341 – Mail Fraud |
| PETER TOWNSLEY, | ) 18 U.S.C. § 2 – Aiding & Abetting |
| Defendant. | ) SAN FRANCISCO VENUE |

S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

BACKGROUND AND LEGAL FRAMEWORK

At all times relevant to this Indictment:

1. The defendant, PETER TOWNSLEY, was the founder and president of California Liquid Fertilizer ("CLF"), a company that sold products represented to be "organic" fertilizers to farmers throughout California.

2. CLF first maintained an office and manufacturing facility in

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

Salinas, California, and in 1999 moved to Gonzales, California, both of which are in the Northern District of California.

3. In 1990, Congress enacted the Organic Foods Production Act of 1990, ("OFPA"), 7 U.S.C. § 6501 et seq., to establish national standards governing the production and marketing of certain agricultural products as "organic." As a result of the OFPA, the United States Department of Agriculture ("USDA") established the National Organic Program ("NOP") and accompanying regulations, hereafter referred to as the NOP regulations. 7 C.F.R. Part 205. The NOP regulations went into effect on April 21, 2001.

4. The OFPA and NOP regulations established national regulations that controlled, among other things, the production, certification, and labeling of agricultural products that were to be marketed as "organic." The NOP regulations provided that any agricultural product that was sold, labeled, or represented as "100 percent organic," "organic," or "made with organic [specified ingredients or food group(s)]," must be produced and handled in accordance with the NOP regulations. 7 C.F.R. § 205.102. The NOP regulations specifically regulated what materials a grower of "organic" products was permitted to use, and was prohibited from using, in the production process, including materials such as fertlizers that were applied to the soil. Such materials were listed in the NOP regulations in "The National List of Allowed and Prohibited Substances," also known as "the National List." 7 C.F.R. §§ 205.600 - 205.607.

5. After the enactment of the NOP regulations, a grower who wished to market its agricultural products as "organic," was required to have the growing operation certified as complying with the NOP regulations. Such certifications were conducted on a regular basis by USDA-accredited certifying agents, also known as certifiers. Certifiers such as California Certified Organic Foundation ("CCOF") were accredited by the USDA through a strict application process. A grower seeking to receive

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

2

or maintain "organic" certification was required to, among other things, fully comply with the NOP regulations pertaining to production; maintain records of and disclose each material used in the production process, including fertilizers applied to the soil; and permit certifiers to conduct on-site inspections with complete access to production operations.

6. It took a minimum of three years for a farm to become certified as complying with NOP regulations because the land on which the product was being grown was required to be free of substances prohibited by the National List for at least three years.

7. The California Department of Food & Agriculture ("CDFA") was responsible for licensing and registering distributors and manufacturers of fertilizer materials in California. The CDFA required all fertilizer material to be appropriately and accurately labeled. On February 6, 2004, the USDA approved California's State Organic Program under the NOP, thereby permitting the state, through the CDFA, to administer and enforce NOP regulations.

8. The Organic Materials Review Institute ("OMRI") was a non-profit organization that provided independent review of materials and processes to determine their suitability for use in the production, processing, and handling of "organic" products. A manufacturer of materials designed to be used by growers in "organic" production, such as a fertilizer manufacturer, could apply to OMRI to have OMRI review the product's formulation in order to assure growers that the product complied with standards for "organic" production. After enactment of the NOP regulations, OMRI reviewed such products and their ingredients in order to determine whether they complied with the National List. If OMRI determined that the product and its formulation fully complied with the National List, and thus NOP regulations, it would place the product on its

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

3

approved Brand Name Products List. The manufacturer was thereafter permitted to market the product as "OMRI Listed" and include OMRI's trademarked seal on the product's label. Growers who sought to become certified to market their products as "organic" would rely on OMRI listing to ensure that the products they were using complied with the NOP regulations. In determining whether to certify a grower as complying with NOP regulations, a certifier such as CCOF could check to see if a product, such as a fertlizer, used by a grower was listed as approved by OMRI.

9. To have a product such as a fertilizer placed on OMRI's list of approved Brand Name Products, a manufacturer such as CLF was required to submit an application to OMRI fully disclosing all the ingredients in the product and the manner in which it was manufactured or produced. Once a product was approved by OMRI, the manufacturer of the product was required to renew its application every year in order to maintain the OMRI listing. In doing so, the manufacturer was required to disclose and certify, among other things, whether anything had changed in the formulation of the product. OMRI also required that when a manufacturer reformulated an OMRI Listed product (adding or removing any ingredients or processes), the changes had to be reported to OMRI immediately.

10. Both before and after enactment of the NOP regulations and the National List, ammonium chloride and ammonium sulfate were materials that were not permitted to be used in the production of agricultural products to be marketed as "organic."

## SCHEME TO DEFRAUD

11. Beginning at a time unknown to the grand jury, but no later than April 2000, and continuing through in or about December 2006, in the Northern District of California and elsewhere, the defendant,

PETER TOWNSLEY,

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

4

and others known and unknown to the grand jury, did engage in a material scheme to defraud OMRI, certifiers including CCOF, and customers such as growers, including growers of products to be marketed as "organic," and to obtain money and property from customers by means of materially false and fraudulent pretenses, representations, and promises, and by material omissions, and did use the mails and cause the mails to be used to carry out and attempt to carry out essential parts of the scheme.

12. In November and December 1998, TOWNSLEY signed and submitted applications to OMRI to have a CLF product called "Biolizer XN" reviewed and approved for OMRI listing as an allowed brand name product. TOWNSLEY provided information about, among other things, the ingredients and manufacturing process for Biolizer XN. TOWNSLEY's final application on behalf of CLF stated that Biolizer XN was a liquid fertilizer composed of ocean-going fish and fish byproducts, feathermeal, and water. In reliance on TOWNSLEY'S representations about Biolizer XN, in February 1999, OMRI approved Biolizer XN as allowed for use in "organic" production. CLF then began marketing Biolizer XN as a fertilizer that was approved by OMRI for use in "organic" production.

13. As part of his scheme to defraud, in approximately April 2000, TOWNSLEY knowingly changed and caused to be changed the ingredients in Biolizer XN without notifying OMRI. After this time, instead of using OMRI-approved fish and fish byproducts, feathermeal, and water, TOWNSLEY and others affiliated with CLF substituted ingredients that did not comply with OMRI's standards for substances allowed in "organic" agricultural production and were prohibited under the National List. TOWNSLEY and others affiliated with CLF changed the formulation of Biolizer XN in part because the fish and feathermeal were not well suited for drip irrigation (a manner in which growers can apply fertilizer to the soil), and because the fish and feathermeal ingredients did not provide the amount of nitrogen that customers were seeking. Despite

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

5

knowing that the new formulations had not been approved by OMRI, TOWNSLEY continued to sell Biolizer XN as a product approved by OMRI until December 2006.

14.  As a further part of his scheme to defraud, from approximately August 2000 through July 2006, TOWNSLEY submitted annual renewal applications to OMRI that falsely stated that the information previously submitted to OMRI regarding Biolizer XN had not changed. At no time after obtaining the initial approval from OMRI in 1999 did TOWNSLEY inform OMRI of the change in ingredients or submit a new application to OMRI for the reformulated product. Nor did TOWNSLEY inform OMRI that he had substituted ingredients prohibited under the NOP regulations.

15.  From August 2000 through December 2006, based on TOWNSLEY's material misrepresentations and omissions, OMRI kept Biolizer XN on its allowed Brand Name Products List and permitted CLF to use the "OMRI Listed" seal in connection with CLF's marketing of Biolizer XN.

16.  As a further part of his scheme to defraud, TOWNSLEY continued to market and sell CLF's Biolizer XN fertilizer as a product that was approved and listed by OMRI. The Biolizer XN labels continued to bear the "OMRI Listed" seal. Even after eliminating the OMRI-approved ingredients from the formulation of Biolizer XN, CLF continued to represent that Biolizer XN was derived from "ocean going fish and hydrolized feathermeal" or from "seafood byproducts, plant extracts, and hydrolyzed feathermeal." At no time did the labels or other information publicly disseminated by CLF about Biolizer XN disclose the use of ingredients in Biolizer XN that were prohibited for use in "organic" agricultural production under the NOP regulations. From May 2000 through in or about December 2006, TOWNSLEY marketed and sold approximately $6 million worth of Biolizer XN knowing that OMRI had not approved the formulation being marketed, the product did not contain fish or feathermeal, and the

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

product contained materials that did not comply with standards and regulations for "organic" agricultural production.

COUNT ONE: 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud

17. Paragraphs 1 through 16 of this Indictment are hereby re-alleged and incorporated by reference as if set forth in full herein.

18. From at least in or about April 2000 through in or about December 2006, both dates being approximate and inclusive, in the Northern District of California and elsewhere, the defendant,

PETER TOWNSLEY,

together with others, did knowingly and intentionally conspire to devise a material scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by material omissions, and for the purpose of executing such scheme and artifice, did use the mails and knowingly cause the mails to be used, in violation of Title 18, United States Code, Section 1349.

Certain Acts in Furtherance of the Conspiracy

19. As part of the conspiracy and to carry out its objects, the defendant PETER TOWNSLEY, together with others known and unknown to the grand jury, committed and caused to be committed the following acts, among others, in the Northern District of California and elsewhere:

a. In or about April 2000, TOWNSLEY and others who worked for CLF changed the ingredients for the manufacture of Biolizer XN from fish and feathermeal to a product that contained ammonium chloride.

b. On or about August 18, 2000, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated July 30, 2000, and which stated the following certification: "The Information above and attached is correct

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

7

to the best of my knowledge, and the information already submitted to OMRI regarding the products listed above has not changed. I agree to abide by all policies in the most current version of the OMRI Operating Manual."

  c. In or about June 2001, TOWNSLEY and others who worked for CLF again changed the ingredients for the manufacture of Biolizer XN, thereby substituting one product that contained a prohibited ingredient for another product that contained a prohibited ingredient. The new ingredient was ammonium sulfate – a chemical compound that is a by-product from the production of lysine and is commonly used in fertilizers in conventional, non-"organic" farming.

  d. From approximately May 2001 through December 2006, CLF produced Biolizer XN without using fish or feathermeal as ingredients, but instead using a material containing ammonium sulfate.

  e. From approximately May 2001 through December 2006, TOWNSLEY marketed and sold Biolizer XN as "100% Natural Organic Fertlizer," derived from fish and feathermeal, and OMRI approved for use in "organic" production.

  f. On or about August 7, 2001, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated July 24, 2001. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

  g. On or about September 6, 2002, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated August 30, 2002. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

  h. On or about September 8, 2003, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated August 30,

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

2003. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

     i. On or about March 5, 2004, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated February 11, 2004. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

     j. On or about August 9, 2004, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated August 2, 2004. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

     k. On or about July 1, 2005, CLF purchased approximately 190,000 pounds of a conventional liquid fertilizer that contained ammonium sulfate from a company located in Illinois.

     l. On or about July 22, 2005, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated July 18, 2005. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

     m. On or about August 10, 2005, TOWNSLEY submitted by mail a letter to OMRI that included a current label for Biolizer XN, which stated that the product was "derived from ocean going fish and hydrolyzed feathermeal" and "is listed by the Organic Materials Review Institute (OMRI) for use in organic production."

     n. On or about July 21, 2006, TOWNSLEY submitted by mail an annual renewal form for Biolizer XN to OMRI, which he signed and dated June 29, 2006. TOWNSLEY falsely certified that the information previously submitted for Biolizer XN had not changed.

o. On or about July 22, 2006, CLF purchased approximately 190,000 pounds of a conventional liquid fertlizer that contained ammonium sulfate from a company located in Illinois.

p. On or about August 18, 2006, CLF mailed an invoice to Customer A, a grower engaged in "organic" agricultural production in Salinas, California, for the purchase of a bulk shipment of Biolizer XN.

q. On or about August 23, 2006, CLF mailed an invoice to Customer A, a grower engaged in "organic" agricultural production in Salinas, California, for the purchase of a bulk shipment of Biolizer XN.

r. On or about September 7, 2006, CLF mailed an invoice to Customer A, a grower engaged in "organic" agricultural production in Salinas, California, for the purchase of a bulk shipment of Biolizer XN.

s. On or about October 24, 2006, CLF mailed an invoice to Customer B, a supplier located in Fresno, California, who provided fertilizers to growers engaged in "organic" agricultural production, for the purchase of a bulk shipment of Biolizer XN.

COUNTS TWO THROUGH EIGHT: 18 U.S.C. § 1341 – Mail Fraud

20. The allegations set forth in paragraphs 1 through 16 of this Indictment are hereby re-alleged and incorporated herein by reference as if set forth in full herein.

21. On or about the dates set forth below, in the Northern District of California and elsewhere, to execute the scheme and artifice defraud set forth above, the defendant,

PETER TOWNSLEY,

did knowingly cause to be deposited in post offices and authorized depositories the below-listed mail matter to be delivered by the United States Postal Service and private and commercial interstate carriers:

///

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

| Count | Approximate Date of Mailing | Mailed From | Mailed To | Item Description |
|---|---|---|---|---|
| 2 | July 22, 2005 | Gonzales, CA | Eugene, OR | OMRI Annual Renewal Form |
| 3 | August 10, 2005 | Gonzales, CA | Eugene, OR | Letter from Townsley to OMRI with current Biolizer XN label |
| 4 | July 21, 2006 | Gonzales, CA | Eugene, OR | OMRI Annual Renewal Form |
| 5 | August 18, 2006 | Gonzales, CA | Salinas, CA | Invoice from CLF to Customer A for Biolizer XN |
| 6 | August 23, 2006 | Gonzales, CA | Salinas, CA | Invoice from CLF to Customer A for Biolizer XN |
| 7 | September 7, 2006 | Gonzales, CA | Salinas, CA | Invoice from CLF to Customer A for Biolizer XN |
| 8 | October 24, 2006 | Gonzales, CA | Fresno, CA | Invoice from CLF to Customer B for Biolizer XN |

All in violation of Title 18, United States Code, Section 1341.

DATE: July 7, 2011

A TRUE BILL.

/FOREPERSON

MELINDA HAAG
United States Attorney

MIRANDA KANE
Chief, Criminal Division

(Approved as to form: _____)
AUSA BADGER

SUPERSEDING INDICTMENT (TOWNSLEY)
CR 10 0428 CRB

11